ESTATE OF EHLKE: REDFORD, Appellant, vs. RAMLOW,
Executrix, Respondent.*

*May 12—June 10, 1947.*

* On motion for rehearing, see *post,* p. 591.

For the appellant there were briefs by *Zillmer & Redford,* attorneys, and *William C. Dill* of counsel, all of Milwaukee, and oral argument by *Mr. John M. Redford* and *Mr. Dill.*

For the respondent there was a brief by *Alfred Kay,* attorney, and *Ward Dunphy* of counsel, both of Milwaukee, and oral argument by *Mr. Kay.*

A brief for the Post War Legal Service Committee of the Milwaukee Bar Association was filed by *Norman R. Krug* of Milwaukee, as *amicus curiæ.*

FOWLER, J. The case is before the court on an appeal by John M. Redford, who when the case came on for a retrial ordered by this court in *Will of Ehlke,* 244 Wis. 115, 11 N. W. (2d) 497, was appointed by the court "attorney to appear for and represent Harold Wolf, then a member of the armed forces of the United States, serving with the army in New Guinea." The appeal is from an order of the county court denying compensation for professional services and for disbursements claimed to have been rendered and made by Mr. Redford pursuant to and authorized by his appointment. The appointment was made under the Soldiers' and Sailors' Civil Relief Act of congress enacted in 1941, 50 USCA, sec. 510 *et seq.*

On June 29, 1944, when the case came on for the new trial above referred to there was an application by the attorney for Mildred Wolf, the only person who had filed objection to the probate of the will, who was then in the armed service, for a stay of proceedings until his client could get a furlough to enable her to be in attendance at the trial. This motion was denied. At this hearing the court was informed that Harold Wolf was in the armed forces in New Guinea. His forwarding address was given, and the statement was made that the

attorney for Mildred Wolf had had correspondence with him. The court at this hearing, on motion of the proponent of the will, appointed Mr. Redford "to represent Harold Wolf who is in the military service." Mr. Redford having been informed of his appointment appeared and made application for a "reasonable continuance" to enable him to examine the file and determine whether there was probability of Harold's interests being forwarded by the contest, and stated that he would like to make a further motion for a stay to enable him to consult his client. The trial judge then stated that he would take the testimony offered and then adjourn the case to July 6th to give Mr. Redford ample time to make an investigation and "array" his witnesses and present the matter as fully as possible "under the circumstances." It does not appear that any motion was made by Mr. Redford other than above stated.

After the proceedings above stated as occurring on June 29th the retrial was had and judgment entered admitting the will to probate. Mr. Lichtsinn appeared for and represented Mildred Wolf on the retrial and after rendition of judgment appealed the case to this court and briefed and argued the case in Mildred's behalf therein. He was competent and well able fully to protect the interests of his client, both on the retrial and on the appeal, and by his so doing the interests of Harold Wolf, whose interests were identical with Mildred's, would obviously be fully protected. Mr. Redford participated in the retrial as in behalf of Harold but offered no testimony and after judgment filed a notice of appeal in his behalf. He appeared personally before the supreme court when the case was argued and signed a brief with Mr. Lichtsinn as in her behalf. This court on that hearing affirmed the judgment. See *Will of Ehlke*, 246 Wis. 654, 18 N. W. (2d) 490. There was a motion for rehearing in which Mr. Lichtsinn and Mr. Redford joined and both signed a brief in support of the motion. The court granted a rehearing solely for reargument of the question whether the trial court abused its discretion in refusing to grant a stay because of the absence of Mildred

and Harold Wolf in the armed service, and whether the court had power to appoint Mr. Redford to appear for Harold Wolf without the latter's knowledge and consent. Mr. Redford appeared on this rehearing and signed a brief as for Harold with Mr. Lichtsinn. The court, in deciding the motion for rehearing, in the interests of justice vacated its former mandate and reversed the judgment and remitted the record "for the sole purpose of enabling the trial court to hear the testimony of the objector Mildred Wolf and of Harold Wolf, persons in the armed service at the time of the trial, and to reconsider the whole case in the light of such testimony and enter judgment accordingly." *Will of Ehlke,* 247 Wis. 534, 535, 18 N. W. (2d) 490, 19 N. W. (2d) 888. The court considered that it had power to appoint an attorney to represent Harold, but did not expressly decide whether the attorney's authority extended further than to apply for a stay of proceedings.

On March 10, 1946, the case again came before the county court for further proceedings. Harold had then returned to Milwaukee and been discharged from service and Mr. Redford then withdrew his appearance for him. Neither Harold nor Mildred wished to give testimony on that hearing and judgment was again entered admitting the will to probate. Mrs. Ramlow was appointed executrix and her account came on for hearing and was approved on March 26, 1946, and she was then discharged as executrix and her bondsman released.

On May 16th Mr. Redford procured an order requiring the executrix to show cause why his account for services and disbursements in behalf of Harold should not be paid out of the funds of the estate. Hearing was had pursuant to this order on which it appeared that during all the time that Mr. Redford was rendering his alleged service Harold was in New Guinea or the Philippines. It also appeared that Mr. Redford during all this time had not communicated with Harold to determine his wishes respecting an appeal or a retrial or made any effort to do so. It was conceded by the attorney for the estate that

Mr. Redford put in time and made disbursements allegedly in behalf of Harold as shown by his account, but objection was made to any allowance to him therefor because they were unauthorized and unnecessary. The court denied any compensation on the ground that there was "no authority for allowing any fee whatever," and on the further ground that Mr. Redford had not ascertained or made any attempt to ascertain whether Harold wished any appeal or retrial in his behalf to be taken. The total time stated in Mr. Redford's account as expended pursuant to his appointment, and in Harold's behalf, in attending the county court trial, appearance in the supreme court, preparation for retrial and appearance in the supreme court and consultations with Mr. Lichtsinn, Mildred's attorney, is thirty-one days. His total expenses, including $35.80 for a transcript of proceedings in county court, are $51.09.

The portion of 50 USCA, sec. 510 *et seq.,* deemed here material is set out in the margin.[1]

---

[1] "Sec. 510. *Purpose of act; suspension of enforcement of civil liabilities.* In order to provide for, strengthen, and expedite the national defense . . . provision is hereby made to suspend enforcement of civil liabilities, . . . of persons in the military service . . . in order to enable such persons to devote their entire energy to the defense needs of the nation, and to this end the following provisions are made for the temporary suspension of legal proceedings . . . which may prejudice the civil rights of persons in such service. . . .

"Sec. 520 (1). In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file in the court an affidavit setting forth facts showing that the defendant is not in military service. . . . If [such] an affidavit is not filed . . . no judgment shall be entered . . . until after the court shall have appointed an attorney to represent defendant and protect his interest, and the court shall on application make such appointment. . . . And the court may make such other and further order or enter such judgment as in its opinion may be necessary to protect the rights of the defendant under this act.

"(2) . . .

"(3) In any action or proceeding in which a person in military service is a party if such party does not personally appear therein or is not represented by an authorized attorney, the court may appoint an attorney to represent him. . . . But no attorney appointed under this

It is to be noted by reference to the statement in the margin that the utmost service of a person appointed to appear for a soldier in the military service, either required or suggested, is toward procuring such temporary stay of proceedings as is necessary to protect the soldier's interests. The instant soldier was living in Milwaukee and was *sui juris* at the time the probate proceedings were instituted and he had interposed no objection to the probate of the will. As above stated, he was a brother of Mildred Wolf, and her interest was identical with his. Mildred alone objected to the probate of the will and appeared by attorney and in person at the first trial, and she prosecuted an appeal to the supreme court. We perceive no need and no authority under the statute for Mr. Redford to do anything further for Harold than to apply for a stay of proceedings in his behalf. To do that, only one appearance before the county court was necessary, and we consider that $75 is reasonable compensation for what he did toward procuring that.

Besides the procuring of a stay of proceedings being the only relief provided by the Soldiers' and Sailors' Civil Relief Act to be immediately granted in behalf of a soldier it is to be noted that par. (4) of sec. 520 of the act provides that if

act to protect a person in military service shall have power to waive any right of the person for whom he is appointed or bind him by his acts.

"(4) If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person . . . not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant . . . let in to defend; provided it is made to appear that the defendant has a meritorious or legal defense to the action or some part thereof. . . .

"Sec. 521. At any stage thereof any action or proceeding in any court in which a person in military service is involved, . . . shall, on application to it by such person or some person on his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

any judgment is rendered against a person in the military service during his service or within thirty days thereafter, and it appears that such person has been prejudiced by reason of his service in making his defense, the judgment may on his application within ninety days after the termination of his service be opened by the court rendering the judgment and the person be "let in to defend; provided it is made to appear that [he] has a meritorious or legal defense to the action or some part thereof." We consider that this provision afforded all the relief for the protection of Harold that he needed in view of the denial of the court to grant a stay and that that relief was open to him on his discharge from service. All of the services and expenditures of Mr. Redford supposedly in defense of Harold's interest were therefore unnecessary, and unauthorized except for one appearance to move for a stay. See *Martin v. Rolfe,* 207 Ark. 1072, 184 S. W. (2d) 70, 73. No appointment of an attorney for the soldier in the *Martin Case* had been made, but we consider that the same relief under par. (4) is open to the soldier when appointment to represent him has been made and a stay denied, as when no appointment has been made.

The appellant contends that under sec. 324.29 (4), Stats., enacted by the Wisconsin legislature by ch. 319, Laws of 1945, he is entitled to compensation. It is to be noted that under that statute he could only be compensated for such services as were reasonably necessary to be performed pursuant to his appointment. Opposing counsel contends that he cannot be compensated at all under that statute because the statute is not retroactive. Whether the statute is retroactive we consider not necessary to determine because we consider that the appellant is entitled to recover to the extent above stated for another reason.

In *Will of McNaughton* (1909), 138 Wis. 179, 118 N. W. 997, 120 N. W. 288, it was held that a guardian *ad litem* for an infant party to proceedings in the settlement of an estate may be paid out of the general estate being administered by

the court when the infant has no estate of his own out of which the guardian can be compensated. It had theretofore been held, in cases in which the infant had an estate of his own, that this could not be done. *In re Donges' Estate* (1899), 103 Wis. 497, 79 N. W. 786, *Tyson v. Richardson* (1899), 103 Wis. 397, 79 N. W. 439, and *Stephenson v. Norris* (1906), 128 Wis. 242, 263, 107 N. W. 343, are such cases. In the *Donges' Estate* it was stated, p. 518, that if the infant had no estate the guardian must perform his service without compensation under his general obligation as an attorney, but the statement was *obiter* because the infant involved had an estate out of which he could be compensated. Prior to the decision in the *McNaughton Case, supra,* the legislature had enacted ch. 267, Laws of 1907, which specifically declared that guardians *ad litem* might be paid out of the general estate being administered in probate courts when the "infant" had no property of his own. The *McNaughton* opinion points out that the settlement of an estate is a proceeding *in rem* to which all persons interested are parties, and the adult parties are entitled to have a guardian *ad litem* for infants appointed in the protection of their own rights to have possession and use of their interest in the property or fund being administered, whence guardian *ad litem* fees are properly chargeable to the estate or fund being administered. The appellant's duties and powers are not in all respects comparable to those of a guardian *ad litem,* but he was appointed by order of court, the need for his appointment was comparable to that of the appointment of a guardian *ad litem,* and the same reason applied for his appointment and compensation for his services out of the estate that applies in case of a guardian *ad litem.*

Ch. 345, Laws of 1945, amended sec. 324.13 (2), Stats., and in so doing struck out the provision of the 1907 act that the guardian *ad litem* must be paid out of his own estate if he has any. In *In re Donges' Estate, supra,* it is suggested that it is doubtful whether this would not constitute want of due

process, but that is here immaterial because the appellant is in the same situation as far as compensation is concerned as an infant without means of compensation. Harold Wolf is not liable to compensate the appellant for he neither employed him nor consented to nor had knowledge of appellant's appointment or rendition of service. What the legislature could do by way of compensation of a guardian *ad litem* out of the general estate the court could do of its own motion. We consider that independent of other grounds the county court might and should have allowed compensation to the appellant to the extent indicated. As to the amount of that compensation it is pointed out in the *McNaughton* opinion that it should be measured by compensation commonly allowed to those in the public service, rather than the fees ordinarily chargeable between attorney and client. It is of some bearing that the compensation allowed attorneys appointed to defend indigent defendants is fixed by statute at $25 per day for services rendered in open court. The amount customarily allowed by this court to the attorney for the board of bar commissioners is $50 per day for appearance in this court. The bar commissioners are allowed $10 per day by statute, sec. 20.65, Stats. We think the amount first above suggested is all that should be allowed as compensation for the services required of the appellant pursuant to his appointment.

*By the Court.*—The order of the county court is reversed, and the record is remanded with directions to enter an order for payment of $75 by the executrix out of the funds of the estate. No taxable costs are allowed but the appellant will pay the fees of the clerk of this court.

The following opinion was filed September 9, 1947:

FOWLER, J. (*on motion for rehearing*). The appellant moves for a rehearing on several grounds, one of which we consider well taken. The court below denied appellant recovery. We directed recovery of $75 but directed that it be without

costs. We consider that we erred in denying costs. No occasion for reargument or further briefs seems required. The portion of the mandate denying costs to the appellant is vacated and there is substituted therefor the following: "The appellant will recover costs of the appeal" and $25 costs on the motion for rehearing.