VARA, Plaintiff, v. VARA, JR., Defendant.

Common Pleas Court, Highland County.

No. 18801. Decided January 6, 1961.

*Messrs Hapner & Hapner*, for plaintiff.
*Mr. Forrest F. Beery*, for defendant.

(CASE, J., of Fayette County, sitting by assignment in Highland County.)

For further history see *Omnibus Index* in bound volume.

CASE, J.   This cause is now before the court upon defendant's motion to quash service which reads as follows:

"Now comes the defendant, by his attorney, and reserving a special appearance, respectfully moves the Court to quash the service herein.

"Defendant says that a summons and a copy of the Petition were not mailed to the defendant at his last known place of residence forthwith upon filing the same in accordance with Section 3105.06 R. C.; that immediately after the first publication of Notice, plaintiff, who was the party making the service, failed to deliver copies thereof, with the proper postage, to the Clerk of the Court as required by Section 2703.16, Revised Code."

In support of said motion, defendant's attorney filed the following memorandum:

"Section 3105.06, Revised Code.   The Petition herein was filed on the 25th day of June, 1960, and in said Petition it is alleged in the last half of the second paragraph

". . . 'that he is a resident of Bonifay, Holmes County, State of Florida; that he is now assigned to the Infantry Officers Advance Course at Ft. Benning, Georgia.'

"In view of the foregoing statement in the Petition, Section 3105.06, Revised Code, requires that notice of the pend-

ency of the action be given by publication. Nevertheless, plaintiff filed a Precipe for summons to be directed to the Sheriff of Highland County, Ohio, for service on defendant, and the same was issued June 25, 1960, and returned July 25, 1960, endorsed 'Not found in bailiwick.'

"Section 2703.16, Revised Code. On August 1, 1960, an Affidavit for Service by Publication was filed herein, and on the 4th day of August, 1960, publication of Notice was commenced in The News-Herald. However, it was not until August 18, 1960, that plaintiff delivered a copy of the Notice with a Precipe to have the same mailed to the defendant at Bonifay, Florida. Inasmuch as Section 2703.16, Revised Code, provides that a copy of the first publication shall be mailed immediately after the first publication, it is manifest that plaintiff did not comply with the requirements of said Code Section."

In opposing said motion to quash service, plaintiff's attorney filed the following memorandum contra thereto:

"The issues involved in this motion is the meaning of the word 'immediately' contained in Section 2703.16, Revised Code. The only case this counsel has found interpreting this in a divorce action is *Case* v. *Case*, 35 Ohio Opinions, 470, in which the notice was not mailed until after publication was completed. Obviously, this is not sufficient. In the instant case, however, notice was mailed to the defendant more than five weeks before the date set for answer in the publication, and the defendant had adequate time to answer or appear and did appear before the time set in the publication.

"Plaintiff further says that this motion is improper inasmuch as defendant has already entered a general appearance in this case by filing on September 24, 1960, a motion for continuance and request for relief under the Soldiers and Sailors Civil Relief Act. This is true even though defendant attempted to signify this appearance as a special appearance. Ohio Jurisprudence, 2nd, says 'It is frequently stated broadly that any appearance except for the purpose of challenging the courts jurisdiction of the person of the defendant is a general appearance." 2 Ohio Jurisprudence, 2nd, Appearance, Section 10. It is a basic rule of law that when a defendant makes a gen-

eral appearance he can no longer move to quash summons or object to jurisdiction."

Subsequent thereto, said motion to quash service was assigned for oral argument and at which hearing neither party was present but each was duly represented by their respective counsel of record. At the close of the arguments so made, the court granted leave for the filing of any further memoranda as counsel might deem beneficial to assist the court.

Within the time specified, plaintiff's counsel filed no further memorandum, and counsel for defendant filed the following reply memorandum:

"Plaintiff, in her Memorandum Contra Defendant's Motion to Quash, has raised an issue calculated to change the entire course of the proceedings by seeking an order which would, in effect, hold that the defendant, by seeking a stay under the Soldiers' and Sailors' Civil Relief Act, had thereby entered a general appearance. The circumstances of seeking relief under this Federal Statute would effectively deny the benefits of this statute to all military personnel which it was designed to protect in cases where the State Court had no personal service or jurisdiction over the defendant.

"The strongest statement in support of plaintiff's contention is found at 2 Ohio Jurisprudence 2d, 510, Appearance, Section 12, wherein the following statement is found:

" 'Thus an appearance which is, in substance, a submission of the defendant's person to the Court's jurisdiction is held to be a general appearance, even though it has been stated that the appearance is made for a special purpose only and is not a general appearance.'

"However, defendant contends, first of all, that this application for a stay under the Federal Statute is not, in substance, a submission of the defendant's person to the Court's jurisdiction and should not be so held. The defendant was not, by this application, seeking leave to plead, and was not seeking any determination on the merits nor directing any objections toward seeking modification of plaintiff's pleadings.

"Under the existing law, the critical problem which now arises is as to what constitutes an appearance on the part of a non-resident defendant in divorce which is sufficient to entitle the divorce decree to full faith and credit under the Sherrer-

Coe Case rule above stated. Some courts have held that to come within the rule, the appearance must be an authorized appearance. . . . Several cases have determined that a 'special Appearance' does not satisfy the rule, although there is some authority to support the contrary view. 18 Ohio Jurisprudence 2d, 149, Sec. 192. See the annotation at 28 A. L. R. 2d, 1303, at Sec. 83, pp 1322, et seq.

"The Supreme Court of the United States has held that the Soldiers' and Sailors' Civil Relief Act, 1940, is always to be liberally construed to protect those persons in military service. 36 Ohio Jurisprudence 2d, 709.

"The removal of a cause from a State Court to a Federal Court where the appearance in both courts is *expressly special*, does not waive objection made in the State Court or in the Federal Court to the State Court's jurisdiction over the person or property of the defendant. 2 Ohio Jurisprudence 2d, 541, Appearance, Section 35. *Levine* v. *Buick, Olds, Pontiac Sales Co.* (4 Ohio Opinions, 117, 2 Ohio Law Abs., 29).

"There is considerable similarity between the procedure for staying further proceedings in a State Court in the process of removing the same to a Federal Court and the procedure for staying further proceedings under the Soldiers' and Sailors' Civil Relief Act. Both involve an interpretation of Federal Statutes and both are seeking stays in the proceedings in the Federal Court. In the Levine case, above cited, the case was remanded back to the State Court and thereupon the defendant filed a Motion to Quash Service of Summons, which the Court entertained, holding that the removal proceedings by defendant did not constitute a general appearance.

"Defendant's application to stay the proceedings under the Federal Statute differs entirely from the line of cases wherein defendant is seeking leave to plead, or is attacking the sufficiency of a pleading or seeking any relief on the merits. For, in this case, the defendant simply asked the Court to hold the case in status quo indefinitely or until after he was discharged from the military service. At that time, the Court admittedly had no jurisdiction over the person of the defendant and did not intend to confer such or to authorize his counsel to enter a general appearance for him. If counsel entered such a general appearance, he erroneously exceeded his authoriza-

tion and should be permitted to withdraw such general appearance, which he asks the Court to permit him to do. 2 Ohio Jurisprudence 2d, 542 and 543, Section 37 and 38, appearances. It would be contrary to public policy to hold the defendant to a general appearance under such circumstances where his only act was an attempt to avail himself of the protection of a Federal Act, the purpose of which is to protect military personnel. The only result of such an attempt by defendant, after refusal of his application, should be that the case proceed the same as if said application had not been made. This was the holding where the application for removal was finally refused in the *Levine case*, 4 Ohio Opinions, 147.

"Defendant's express stipulation that he was entering a special appearance only and not a general appearance should be given some weight. *Flandermeyer* v. *Fishel,* 24 O. C. C. N. S. 576; 2 Ohio Jurisprudence 2d, 510, Appearances, Section 12."

The circumstances and events, which preceded the filing of defendant's motion to quash service, are related and set forth in an opinion previously rendered herein by this court on September 30, 1960, which reads as follows:

"Plaintiff filed her petition for divorce herein on June 25, 1960, and therein alleges as follows:

" 'Plaintiff says that she has been a resident of the State of Ohio for more than one year immediately preceding the filing of this petition and that she is now and has been a bona fide resident of Highland County for more than ninety days immediately preceding the filing of this petition.

" 'Plaintiff says that defendant is a member of the armed forces, holding the rank of Captain in the United States Army; that his service number is 02204111; that he is a resident of Bonifay, Holmes County, State of Florida; that he is now assigned to the Infantry Officers Advance Course at Ft. Benning, Georgia.

" 'Plaintiff says that she and the defendant were married on April 2, 1952, at Darnstadt, Germany; that there have been three children born of this union, viz; Joseph Vara, III, aged 7 years; Whittington Polk Vara, aged 6 years; Renn Alexander Vara, aged 2 years.

" 'Plaintiff says that during said marriage she has been a faithful and dutiful wife, but that the defendant has been guilty of gross neglect of duty and has been guilty of extreme cruelty towards the plaintiffff in his relationship with her as her husband. The full facts constituting said gross neglect of duty and extreme cruelty will be made known upon the trial of this cause of action or earlier upon motion of defendant and order of Court.

" 'Plaintiff further says that defendant has had in his possession certain items of household goods and furnishings, consisting in part of dishes, cutlery, kitchen equipment, linens, sheets, pillow cases, towels, pictures, candelabra, punch bowl, and other and similar items, which she believes defendant has had shipped to the home of his mother in Bonifay, Florida.

" 'Plaintiff says that she has just cause to and does fear for her personal safety and that of her said three children unless the Court enjoins and restrains the defendant from molesting her and her children and from interfering with her in the custody of said children either at home or elsewhere;

" 'Wherefore, plaintiff prays that the defendant be enjoined and restrained by the Court from molesting plaintiff and her said three children and from interfering with plaintiff in the custody of said children either at home or elsewhere; that she may be awarded reasonable temporary and permanent alimony including the said items of household goods and furnishings; that she be awarded full custody, care and control of the said children, Joseph Vara, III, Whittington Polk Vara and Renn Alexander Vara; that the Court award a reasonable amount for support of said children, both permanently and during the pendency of this suit; that plaintiff be allowed and defendant be required to pay a reasonable amount for her attorney fees; that upon final hearing of this cause the plaintiff may be divorced from defendant and for all other and proper relief as the Court may deem just.'

"The files and records show that, subsequent to filing an affidavit for service by publication of notice and publication of such notice in the Hillsboro News-Herald, the Clerk of Courts mailed a copy thereof to the defendant directed to his alleged place of residence at Bonafay, Florida; and that, pursuant

to the answer date stated in said notice, there was filed in this cause a motion and affidavit which read in part as follows:

" 'MOTION

" 'Now comes the defendant, Joseph J. Vara, Jr., by his attorney, Forrest F. Beery, and reserving unto himself a special appearance herein, respectfully moves the Court that hearing of this matter be postponed until defendant has been discharged from service in the United States Army. Defendant further says that he was, at the time of the commencement of this action, and has been at all times thereafter a member of the armed services as set forth in the Affidavit attached hereto, marked "Exhib A," and made a part hereof the same as if herein fully rewritten, and that defendant desires to avail himself of his full rights under the Soldiers and Sailors Relief Act.'

" 'AFFIDAVIT

" 'STATE OF FLORIDA
COUNTY OF HOLMES

" 'Joseph J. Vara, Jr., being by me first duly sworn says that he is now in the military service of the United States of America, he is a Captain in the United States Army and is now in an advanced officer's school in Fort Benning, Georgia, that said schooling is necessary to the continuance of his career in the Army, and that it is necessary that he attend classes in said school on five and one-half days per week, that said school will continue until November 23, 1960, and that he will then enter another military school which will continue until December 21, 1960, and that upon completion of said schooling he will be required to report immediately to Fort Leonard Wood, Missouri, for duty. Affiant further states that he is not able to take time off from this schooling to defend the legal action begun by his ex-wife without seriously prejudicing his schooling and thus prejudicing his career in the Army.'

s/ " 'Joseph J. Vara Jr.
Joseph J. Vara Jr.

" 'Sworn to and subscribed before me this 17th day of September, 1960.

" 'John Paul Griffith
Notary Public, State of Florida at large
My Commission Expires Feb. 20, 1961'

"Defendant's aforesaid motion came on to be heard and was heard by John P. Case, Judge of the Common Pleas Court of Fayette County, Ohio, sitting by assignment. Neither the defendant nor the plaintiff was present. Attorney Forrest F. Beery of Hillsboro, Ohio, appeared on behalf of defendant, and Attorney James D. Hapner of Hillsboro, Ohio, appeared on behalf of the plaintiff.

"In support of defendant's motion to postpone any further hearing of this matter until the defendant has been discharged from service in the United States Army, defendant's attorney cited the Soldiers and Sailors Civil Relief Act of 1940, Title 50, U. S. C. A., Appendix, Section 521, which provides as follows:

" 'At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act (Section 501-548 and 560-590 of this Appendix), unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service. Oct. 17, 1940, c. 888, No. 201, 54 Stat. 1181.'

"In opposition to defendant's motion for such postponement, plaintiff's attorney contended that the Act expressly authorizes further hearings and proceedings in this matter when and if, 'in the opinion of the court, the ability of the defendant to conduct his defense is not materially affected by reason of his military service.'

"The Court, coming now to consider the allegations contained in and relief sought by plaintiff's petition, the defendant's motion that hearing of this matter be postponed until defendant has been discharged from the service of the United States Army, together with the statements made in his affidavit in support thereof, the arguments of counsel for the respective parties, and in addition thereto the representations made by counsel concerning the last sentence stated and set forth in defendant's aforesaid affidavit which reads:

" 'Affiant further states that he is not able to take time off from this schooling to defend the legal action begun by his

*ex-wife* without seriously prejudicing his schooling and thus prejudicing his career in the Army';

"and it appearing to the Court it is not disputed by and between counsel that defendant claims to have sought and obtained a divorce in the State of Florida prior to the filing of the within action by the plaintiff herein; and it further appearing to the Court it is not disputed by and between counsel that defendant returned to the United States from overseas military duty as recently as February, 1960, and subsequent thereto was able to and did, while continuing in the military service, prosecute such action for divorce in the State of Florida, and it not appearing from defendant's affidavit that there has been any change in defendant's active duty status since his aforesaid prosecution of such divorce action in Florida, it is reasonable to conclude that defendant's ability to defend the within action would not be materially affected by reason of his military service to any greater degree than defendant's ability to prosecute the divorce action which defendant claims to have initiated and prosecuted to conclusion in the State of Florida since February of this year.

"Upon due consideration of all of the allegations and statements of record and the undisputed representations of counsel, it does not appear that defendant's aforesaid motion and affidavit were filed in good faith; for example, defendant states in his affidavit that he is required to attend advanced officers' school in Fort Benning, Georgia, five and one-half days per week, but his affidavit shows on its face that he made oath thereto before a notary public in Holmes County, Florida, on September 17, 1960; and while defendant states that he will complete his schooling at Fort Benning on December 21, 1960, and will thereupon be required to report immediately to Fort Leonard Wood for duty, it is apparent that defendant would have the court believe that defendant would not be able to obtain leave, to consult with counsel, or appear at any hearing upon the within matter until defendant 'has been discharged from service' and clearly declines to inform the court whether such discharge would take place within one year, ten years or any number of years; and defendant's affidavit clearly shows that defendant is much more concerned about whether or not his participating in the conduct of his defense in this action

would seriously prejudice his schooling and thus prejudice his career in the Army rather than his concern, if any, about what would be for the best interest and welfare of the three small children alleged in plaintiff's petition to have been born as the issue of defendant's marriage to plaintiff.

"In the light of the items hereinabove set forth and discussed and upon due study and consideration of the clear and express language of the statutory provisions cited and quoted herein, together with due study and consideration of the opinion delivered by Justice Jackson in the case of *Boone* v. *Lightner*, 319 U. S., 561, 87 L. Ed., 1587, this Court is compelled to conclude:

"1. That the defendant, by his motion to stay further hearing in this matter until his discharge from military service, assumed the burden of presenting to the court by his voluntary motion and affidavit sufficient facts and circumstances which are reasonably necessary and expressly required to grant such a stay within the meaning, purpose and intent of said section 521 of the Act;

"2. That, even though defendant was represented by counsel, it clearly appears from defendant's motion and affidavit and from the interrogation of defendant's counsel by the Court that defendant has failed and declined to inform his counsel and the Court of sufficient facts and circumstances which are reasonably necessary and expressly required to grant such a stay within the meaning, purpose and intent of said section 521 of the Act;

"3. That undisputed facts and circumstances represented by counsel to the Court, together with certain representations set forth in defendant's motion and affidavit, were sufficient to show and establish that defendant's ability to conduct his defense would not be materially affected by reason of his military service;

"4. That defendant's failure to state or indicate any certain future time when he might or would be available other than upon his discharge from the service is sufficient to show and establish that defendant's motion and affidavit herein were not filed in good faith; and

"5. That, upon the findings and for the reasons herein-

before stated and set forth, defendant's motion is not well made and should be overruled and denied.''

Concurrently with the written opinion above quoted, the court made and issued, on the same date, its order in conformity therewith and granted defendant leave therein to further plead by on or before October 31, 1960, and also noted for the record defendant's exceptions thereto.

The files and records in this cause show that defendant's motion to quash service was filed herein on October 31, 1960, which was the latest date to which the court had granted leave for the defendant to further plead.

Upon the present state of the record and the respective memoranda submitted by opposing counsel, it clearly appears that the basic issue and question which must first be considered and determined at this time is whether or not the defendant, ''by seeking a stay under the Soldiers' and Sailors' Civil Relief Act, had thereby entered a general appearance.'' (Quotes taken from first sentence in defendant's reply memorandum.)

In the event that this court should determine that the defendant did thereby enter a general appearance, then such determination would be controlling and dispositive and all other issues raised and related to defendant's motion to quash service would become moot.

In his reply memorandum, defendant's counsel argues and contends—''There is considerable similarity between the procedure for staying further proceedings in a State Court in the process of removing the same to a Federal Court and the procedure for staying further proceedings under the Soldiers' and Sailors' Civil Relief Act. Both involve an interpretation of Federal Statutes and both are seeking stays in the proceedings in the Federal Court.'' (Third literary paragraph, page 2, Defendant's Reply Memorandum.)

This court is unable to subscribe to the conclusions reached by defendant's counsel, but is inclined to concede that counsel's comparison and analysis, as set forth in his reply memorandum, were ably presented and seriously considered.

And, although this court has been unsuccessful in its search for a similar factual situation and adjudication with regard to

Title 50, U. S. C. A., Appendix, Section 521, this court has carefully studied and considered the following cited decision of the Supreme Court of Alabama, dated August 18, 1955, wherein it was determined that the appearance of an attorney, for a service-man who was stationed overseas, under the provisions of Section 520, for any purpose, other than to test jurisdiction of a court or the sufficiency and service of process, constituted a general appearance.

In this case of *Ocle V. Blankenship* v. *Mary A. Blankenship*, 82 So. 2d, 335, beginning at page 339, the decision, written by Justice Goodwyn and concurred in by Justices Lawson, Stakely, Merrill and Mayfield, reads in part as follows:

"(2) One question presented, an answer to which will determine this appeal, is whether appellant can now claim the benefits of No. 520(4), supra. As we see it, the right to such benefits is dependent upon whether there was 'a default of any appearance by the defendant' (appellant) in appellee's suit. Section 520 (1), 50 U. S. C. A. Appendix, 54 Stat. 1180, supra. As stated by the Supreme Court of North Carolina in *Lightner* v. *Boone*, 228 N. C., 199, 45 S. E. 2d, 261, 262;

" 'The section of the Soldiers' and Sailors' Civil Relief Act of 1940, 54 Stat. 1180, 50 U. S. C. A., Appendix, No. 520(4), upon which defendant relies is limited by its express terms to judgments entered "on a default of any appearance by the defendant." 50 U. S. C. A. Appendix, No. 520(1). *Shaffer* v. *Shaffer*, 69 Ohio App., 447, 42 N. E. 2d, 176; *Reynolds* v. *Reynolds*, 21 Cal. 2d, 580, 134 P. 2d, 251; *In re Cool's Estate*, 19 N. J. Misc., 236, 18 A. 2d, 714; *Russ* v. *Russ*, 68 Cal. App. 2d, 400, 156 P. 2d, 767; *Sharp* v. *Grip Nut Co.*, 116 Ind. App., 106, 62 N. E. 2d, 774. * * *.'

"(3, 4) It is to be noted that the instrument which appellant's solicitor filed in the suit on December 27, 1951, prayed that the court 'either quash the bill of complaint in this cause, and the service made on this respondent, or continue the cause.' Was this within the term 'any appearance' as used in No. 520 supra? We are constrained to hold that it was. As stated in *Stone* v. *Rudolph*, 127 W. Va., 335, 32 S. E. 2d, 742, 745:

" 'It is well settled and no authority is needed for the proposition, that an appearance in a suit or action for any purpose other than one to test the jurisdiction of the court, or

the sufficiency and service of process, is a general appearance. The filing of an affidavit bearing on the contention that defendant was at that time engaged in the military service of the United States, was certainly not an appearance having anything to do with the jurisdiction of the court to try the action, or one having any bearing whatever on the legality of the service. * * *.'

"(5) Appellant's insistence is that his appearance in the cause was strictly a special appearance for a limited purpose, and not a general appearance. But the benefits of No. 520 are made to depend on an absence of *any* appearance, which includes a special appearance as well as a general appearance. So, whether the appearance made was special or general is not material to the question. The meaning of the phrase was discussed in *In re Cool's Estate*, 19 N. J. Misc., 236, 18 A. 2d, 714, 716, 717, where it was said:

" 'Consideration of the meaning of the phrase "any appearance" is sometimes required. The 1918 Act used the words "an appearance" but in the 1940 Act the phrase was broadened to read "any appearance." The word "appearance" is defined in Webster's New Int. Dict., 2d Ed., 1940, as meaning in law, "the coming into court of a party summoned in an action either by himself or by his attorney." Technically there are several different kinds and methods of appearance. See, Am. Jur., Appearances, No. 1, etc. A default of any appearance by the defendant means a default in any one of several ways of making an appearance. " 'Any' applies to every individual part without distinction." *Stiles* v. *Freeholders of Union County*, 50 N. J. L., 9, 11, 11 A., 143, 144. A party's conduct as well as other circumstances are to be considered in determining whether he has actually appeared.'

"It is not disputed that the court had jurisdiction of both the subject-matter of the suit and of the parties. Nor is it disputed that appellant's solicitor was authorized to make the 'special' appearance. Accordingly, we must hold that said appearance was such as to deny to appellant the benefits of No. 520, supra. The decree of the trial court denying appellant's motion was free of error and is due to be affirmed. So ordered."

It must be noted that Section 520 and Section 521 are related and successive sections of the same Act, and have a common object, policy, and spirit relating to one subject, and therefore must be considered and regarded as being in pari materia. It is a fundamental rule of statutory construction that sections in pari materia should be construed together as if they were a single statute. (See paragraph 2 of syllabus in *State, ex rel. Pratt* v. *Weygandt*, 164 Ohio St., 463.)

In the light of all undisputed facts and circumstances of record herein and the statute and case law hereinabove set forth and discussed, this court is compelled to conclude:

1. That defendant's initial appearance in this cause, by the filing of a motion for relief under Section 521 of the Act, by the filing of his affidavit in support of said motion, and by the representations and arguments of his attorney, was an appearance by defendant for a purpose other than to test the court's jurisdiction and for a purpose other than to test the sufficiency and service of process, and that such appearance by and on behalf of defendant constituted a general appearance; and

2. That, by reason of such general appearance by and on behalf of defendant, defendant's subsequent motion to quash service is not well made and should be overruled and denied.